JUDGE KOELTL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -

08 CRIM 850

UNITED STATES OF AMERICA          :

          -v.-                    :

                                  :

RAFFAELLO FOLLIERI,               :     INFORMATION

          Defendant.             :     08 Cr.          (JGK)

                                  :

                                  :

                                  :

- - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: SEP 1 0 2008

COUNT ONE
(Conspiracy to Commit Wire Fraud)

          The United States Attorney charges:

Relevant Entities and Individuals

          1.    At all relevant times, RAFFAELLO FOLLIERI, the

defendant, was the Chairman and Chief Executive Officer of the

Follieri Group, a company with its principal place of business in

New York, New York.   FOLLIERI represented to the public, including

investors, that the Follieri Group was a real estate investment

company that provided assistance to the Catholic Church by helping

the Church divest itself of unwanted real estate properties in the

United States.

          2.    From in or about 2005 through in or about June

2007, a private equity investment company with headquarters in

California (hereinafter the "Principal Investor") invested

millions of dollars in a partnership with RAFFAELLO FOLLIERI, the

defendant, and the Follieri Group.   The Principal Investor was in

the business of managing investments of millions of dollars, including a significant amount of money from pension funds.

3.    From at least in or about 2005 through at least in or about 2007, RAFFAELLO FOLLIERI, the defendant, controlled a bank account in the name of Keetdale International located in a private bank in Monaco (hereinafter the "Keetdale Account"). FOLLIERI represented to others that Keetdale International was an entity separate and apart from the Follieri Group and that it provided consulting services.  In reality, Keetdale International was a shell company that FOLLIERI used to conceal the source of his money.

4.    From at least in or about 2006 through in or about 2008, RAFFAELLO FOLLIERI, the defendant controlled a bank account in the name of Spiral Associates located in a private bank in Monaco (hereinafter "Spiral Associates Account").  Spiral Associates was a shell company that FOLLIERI used to conceal the source of his money.

5.    From at least in or about 2006 through at least in or about 2007, RAFFAELLO FOLLIERI, the defendant controlled other bank accounts located in private banks overseas.  These entities were also shell companies that FOLLIERI used to conceal the source of his money.

6.    On or about June 15, 2005, RAFFAELLO FOLLIERI, the defendant, the Follieri Group, and the Principal Investor entered

into a limited liability agreement ("Agreement"), forming a
venture partnership ("Venture Partnership") to purchase real
estate properties primarily from the Catholic Church in the United
States, and convert the properties into revenue generating
ventures that returned a profit.  Pursuant to the Agreement, the
Principal Investor agreed to provide millions of dollars in
funding to the Venture Partnership, and FOLLIERI and others agreed
to obtain the properties and manage the Venture Partnership.
FOLLIERI and others were obligated to spend the funds on business,
not personal expenditures.  Part of the funds was designated for
the operation of the business, including administrative expenses,
such as salaries and offices.  The other part of the funds was
designated for the acquisition and development of real estate.

### Misrepresentations About The Vatican

7.    From at least in or about 2005 up through and
including in or about June 2007, RAFFAELLO FOLLIERI, the
defendant, and others known and unknown, misrepresented the
connections of FOLLIERI and others to the Vatican.  FOLLIERI told
the Principal Investor and others that he had key relationships in
place with the Vatican that gave him a substantial advantage in
terms of obtaining properties owned by the Catholic Church in the
United States.  For example, FOLLIERI told a representative of the
Principal Investor that he had been appointed as the Chief
Financial Officer of the Vatican.  FOLLIERI told others, including

3

employees of the Venture Partnership, that he had a formal role at the Vatican, that he managed investments on behalf of the Vatican, and that he met with the Pope in person when he visited Rome.

8.   RAFFAELLO FOLLIERI, the defendant, and others known and unknown, misrepresented that, as a result of FOLLIERI's connections to the Vatican, FOLLIERI and others working for him could obtain properties of the Catholic Church in the United States at a substantial discount to the fair market value. FOLLIERI told the Principal Investor that, because of his connections, he had a right of first refusal to purchase any properties that the Catholic Church sought to sell in the United States.  FOLLIERI told employees of the Venture Partnership, among others, that the Vatican needed to approve of any purchase of properties owned by the Catholic Church in the United States.   In truth and in fact, the Vatican did not have to approve such purchases unless they involved a certain dollar amount in the multi-million dollar range.  FOLLIERI further told employees of the Venture Partnership, among others, that he was able to buy these properties at a substantial discount from the fair market value.  In reality, FOLLIERI and those working for him submitted bids for the purchase of properties in the United States like any third-party investor, and often did not pay below the fair market value to purchase the properties.

9.   During the period from at least in or about 2005 through at least in or about June 2007, RAFFAELLO FOLLIERI, the defendant, hired a nephew (the "Nephew") of the former Secretary of State of the Vatican and falsely claimed to the Principal Investor that the Nephew had to review all potential purchases of property owned by the Catholic Church in the United States with the Vatican.   In addition, FOLLIERI used money provided by the Principal Investor to travel with one or more monsignors of the Catholic Church who worked in the United States to create the false impression that FOLLIERI and the Follieri Group had close ties with the Vatican.

10.   At all relevant times, as part of the fraudulent scheme, RAFFAELLO FOLLIERI, the defendant, asked an administrative employee at the Vatican to obtain contact information of Bishops, Cardinals, and other clergymen, to arrange for meetings with various members of the clergy, show the gardens of the Vatican to FOLLIERI's guests, and arrange for guided tours of a museum at the Vatican to make it falsely appear that FOLLIERI's ties to the Vatican provided him with the right of first refusal to purchase Church properties in the United States at a substantial discount to the fair market value.   FOLLIERI secretly paid this administrative worker to arrange for meetings and other favors. By the Fall of 2006, FOLLIERI and this administrative employee at the Vatican entered into a financial arrangement whereby the

employee would be paid to run a new real estate company started by FOLLIERI in Italy called "Follieri SPA" in exchange for this employee's assistance.

11.   RAFFAELLO FOLLIERI, the defendant, knew that these representations that he and his company had significant ties to the Vatican, which were used to obtain money from the Principal Investor and others, were materially false and misleading. Indeed, in a letter dated March 8, 2006, the Vatican's then-Secretary of State warned FOLLIERI to stop representing that the Follieri Group had ties to the Vatican.  Despite that warning, FOLLIERI continued to make false and misleading representations regarding the nature of his relationship with the Vatican.  In fact, after receiving this letter, FOLLIERI falsely claimed to the Principal Investor and others that he was, among other things, handling the Vatican's financial affairs and that he was the equivalent of the Chief Financial Officer of the Vatican.

## Misrepresentations About Use Of Investor Money

12.   In truth and in fact, and in violation of his representation to, and his Agreement with, the Principal Investor, RAFFAELLO FOLLIERI, the defendant, failed to use hundreds of thousands of dollars of investor funds for the purpose of appraising and purchasing Catholic Church properties.  Rather, FOLLIERI diverted the money to pay his personal expenses and otherwise fund a lavish personal lifestyle and transferred the

money to personal bank accounts under the control of FOLLIERI and his co-conspirators not named herein.  For example, FOLLIERI used investor funds to pay for charges of a personal nature, including flowers, cosmetics, clothes, wine, expensive dinners, dog walking services, personal vacations for himself, his parents, and his girlfriend at the time, dental expenses for FOLLIERI's father, medical expenses for himself, his parents, and his girlfriend at the time, and Yacht rentals.

13.  From on or about December 28, 2005 through on or about January 8, 2006, FOLLIERI took his parents, friends, and his girlfriend at the time on a vacation in the Dominican Republic. FOLLIERI used approximately $97,535 of investor money to pay for a private charter flight to and from the Dominican Republic. Shortly thereafter, FOLLIERI was sued for failing to pay for certain expenses that he and others incurred in the Dominican Republic.  On or about May 24, 2006, FOLLIERI used investor money to pay approximately $18,200 to settle the lawsuit and pay the money that he owed.  In addition, on or about January 26 and 27, 2006, FOLLIERI used approximately $42,566 of investor money to pay for a private charter flight for him and his then-girlfriend to fly to and from the Bahamas for a vacation.  Further, on or about July 21, 2006, FOLLIERI used approximately $26,417 to take a private charter flight from Vienna, Austria, to Nice, France, during a vacation with his then-girlfriend.  On or about February

13, 2007, FOLLIERI used approximately $20,000 of investor money to fly himself and friends from Los Angeles, California, to Las Vegas, Nevada, for a personal vacation.  During this trip to Las Vegas, FOLLIERI spent over $6,000 of investor money to rent two rooms at a luxury hotel.

14.  RAFFAELLO FOLLIERI, the defendant, also diverted money provided by the Principal Investor to pay expenses incurred by his girlfriend at the time.  For example, on or about June 12 and 13, 2006, FOLLIERI used investor money to pay approximately $2,277 to fly his girlfriend at the time on a round-trip flight between Jamaica, New York, and Los Angeles, California.

15.  RAFFAELLO FOLLIERI, the defendant, and others known and unknown, falsely represented that the Venture Partnership needed an apartment in New York, New York, to house dignitaries from the Vatican and build goodwill with the Vatican in order to improve the Venture Partnership's ability to obtain properties of the Catholic Church in the United States.  FOLLIERI told the Principal Investor that he did not want the Vatican dignitaries staying at hotels, and that these dignitaries were critical decision makers with respect to the sale of church properties.  As a result, FOLLIERI obtained an apartment (hereinafter the "Apartment") on the forty-sixth and forty-seventh floors of a luxury, high-rise condominium in New York, New York, overlooking Rockefeller Center and with views of Central Park.

16.   In reality, RAFFAELLO FOLLIERI, the defendant, used the Apartment as his personal home, represented to others that he owned it, and neither dignitaries from the Vatican nor critical decision makers with respect to the sale of church properties in the United States stayed overnight in the Apartment.  As a result of the false representations made by FOLLIERI, from at least in or about February 2006 up through and including in or about December 2006, FOLLIERI used money from the Principal Investor to pay the following amounts, among others, in connection with the Apartment:

a.   Approximately $37,000 per month to lease the Apartment for a total amount of at least $407,000;

b.   Over $60,000 for services to clean the Apartment;

c.   Over $35,000 for meals and other household costs; and

d.   Over $37,000 for furniture in the Apartment.

### Misrepresentations About A Non-Existent Italy Office

17.   From in or about 2005 up through and including in or about early 2007, RAFFAELLO FOLLIERI, the defendant, falsely represented to the Principal Investor that he had opened an office in Rome, Italy (hereinafter the "Italy Office") to further the business of the Venture Partnership.

18.   In truth and in fact, from in or about 2005 through in or about February 2007, RAFFAELLO FOLLIERI, the defendant, did

9

not open an Italy Office.  In or about late 2006, FOLLIERI was confronted about the absence of proof that an Italy Office existed.  In response, and to conceal that no Italy Office existed between in or about 2005 and early 2007, FOLLIERI caused false invoices to be generated that reflected that payments were due for the rent of an Italy Office in 2006.

19.  Based on the false representations of RAFFAELLO FOLLIERI, the defendant, regarding the existence of the Italy Office, FOLLIERI caused several hundred thousand dollars in investor money to be sent by wire transfer from a bank account in New York, New York, to his Keetdale Account in Monaco.  FOLLIERI also spent investor money on expenses that he falsely claimed were related to the Italy Office.  For example, in or about late 2006, while in Italy, FOLLIERI wrote thousands of dollars in checks from the bank account of the Venture Partnership under the false pretense that the money was being used to pay expenses relating to the non-existent Italy Office.

## Misrepresentations About "Engineering Reports"

20.  From in or about 2005 up through and including in or about 2007, RAFFAELLO FOLLIERI, the defendant, and others known and unknown, charged the Venture Partnership over $800,000 for reports that FOLLIERI falsely represented were engineering studies about properties of the Catholic Church in the United States (hereinafter "Engineering Reports").  The author of these

Engineering Reports was the Nephew of the then-Secretary of State of the Vatican.  FOLLIERI, and others known and unknown, further represented that the Engineering Reports analyzed the properties of the Catholic Church in the United States before the Venture Partnership submitted a bid to purchase them, and that the Engineering Reports had to be submitted to the Vatican before the Vatican could make any decision about whether to sell those properties.

21.  In or about 2006, during weekly conference calls among RAFFAELLO FOLLIERI, the defendant, his associates in New York, New York, and representatives of the Principal Investor in California, FOLLIERI repeatedly asked for money to pay for the Engineering Reports and charged the Venture Partnership approximately $30,000 for one report relating to property that the Catholic Church did not even own.

22.  In or about 2006, representatives of the Principal Investor and at least one employee of the Venture Partnership requested that RAFFAELLO FOLLIERI, the defendant, provide them with the Engineering Reports.  After those requests, FOLLIERI produced invoices of the Engineering Reports but not the reports themselves.  FOLLIERI caused these invoices to be created in or about early 2007--long after investor money was used to pay for the Engineering Reports--and backdated to the prior years.

## Misrepresentations About Non-Existent Consulting Services

23.   On or about August 14, 2006, RAFFAELLO FOLLIERI, the defendant, caused $150,000 of money from the Principal Investor to be wired from a bank account in New York, New York, to his Keetdale Account in Monaco.  FOLLIERI falsely represented that (a) the money was needed for an architecture study to convert a church property that the Venture Partnership had purchased into a mausoleum, which would serve as a burial chamber, and (b) Keetdale International was providing consulting services for the construction of the mausoleum.  In truth and in fact, Keetdale International never provided any such consulting services, FOLLIERI had learned that the church property could not be converted into a mausoleum, and FOLLIERI simply diverted the funds to his own personal bank account in Monaco.

## FOLLIERI's Fraudulent Scheme Unraveled

24.   Throughout in or about 2006, as RAFFAELLO FOLLIERI, the defendant, and others known and unknown, requested additional funding from the Principal Investor, the Principal Investor sought more information about FOLLIERI's expenditures.  Among other things, the Principal Investor started to demand more proof of the expenditures and to restrict the amount of money that the Principal Investor provided to the Venture Partnership.

25.   By in or about early 2007, RAFFAELLO FOLLIERI, the defendant, began to look for new investors.  Among other things,

FOLLIERI directed the production of a pitch book based on the false representations that FOLLIERI had significant, high-level connections with the Vatican and the ability to obtain church properties at below fair market values.   FOLLIERI also created a pitch book to start up a media company called "Follieri Media." The pitch book for Follieri Media, which FOLLIERI had distributed to several potential investors, stated, among other things, that Follieri Media had a "unique relationship with the Catholic Church," and proposed acquiring assets such as the National Catholic Reporter, the Legionnaires Radio, and ETWN (a Catholic satellite network).

26.   In or about the Spring of 2007, after RAFFAELLO FOLLIERI, the defendant, failed to produce the Engineering Reports that it had requested and the Principal Investor learned that FOLLIERI continued to use investor funds for personal expenditures, the Principal Investor fired FOLLIERI.

## STATUTORY ALLEGATIONS

### The Conspiracy

27.   From at least in or about May 2005 up through and including in or about June 2007, in the Southern District of New York and elsewhere, RAFFAELLO FOLLIERI, the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each

other to commit offenses against the United States, to wit, wire
fraud, in violation of Title 18, United States Code, Section 1343.

### Object of the Conspiracy

### Wire Fraud

28.  It was a part and object of the conspiracy that
RAFFAELLO FOLLIERI, the defendant, together with others known and
unknown, having devised and intending to devise a scheme and
artifice to defraud, and for obtaining money and property by means
of false and fraudulent pretenses, representations, and promises,
unlawfully, willfully and knowingly, directly and indirectly,
would and did transmit and cause to be transmitted by means of
wire, radio, and television communication in interstate and
foreign commerce, writings, signs, signals, pictures and sounds
for the purpose of executing such scheme and artifice, in
violation of Title 18, United States Code, Section 1343.

### Means and Methods of the Conspiracy

29.  Among the means and methods by which RAFFAELLO
FOLLIERI, the defendant, and his co-conspirators, would and did
carry out the conspiracy were the following:

a.   FOLLIERI made, and caused others to make,
false and fraudulent representations to the Principal Investor and
others regarding the nature and significance of his ties to the
Vatican and his ability to obtain exclusive right of access to

Catholic Church property for sale in the United States at a discount to the fair market value.

b.    FOLLIERI made, and caused others to make, false and fraudulent representations regarding the use of investor funds and diverted investor funds by using them to pay for personal expenses, and transferring them to personal and unrelated corporate accounts under his control or the control of his co-conspirators.

c.    FOLLIERI wired investor funds to an overseas bank account in a company name to conceal that he was controlling the account.

## Overt Acts

30.   In furtherance of the conspiracy and to effect the illegal objects thereof, RAFFAELLO FOLLIERI, the defendant, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.    On or about September 28, 2005, FOLLIERI caused approximately $135,000 to be sent by wire transfer from a bank account in New York, New York, to a bank account in Monaco, purportedly to pay for an Italy Office when in fact no such office existed.

b.    On or about November 2, 2005, FOLLIERI caused approximately $25,000 to be sent by wire transfer from a bank account in New York, New York, to the Vatican in Rome, Italy,

purportedly to pay for an Engineering Report.

        c.   On or about November 4, 2005, FOLLIERI caused approximately $3,000 to be sent by wire transfer from a bank account in New York, New York, to a manufacturer of custom-made mens suits in Milan, Italy.

        d.   On or about December 19, 2005, FOLLIERI caused approximately $30,000 to be sent by wire transfer from a bank account in New York, New York, to a bank account in Monaco, purportedly to pay for an Italy Office when in fact no such office existed.

        e.   On or about March 1, 2006, FOLLIERI caused approximately $135,000 to be sent by wire transfer from a bank account in New York, New York, to a bank account in Monaco, purportedly to pay for an Italy Office when in fact no such office existed.

        f.   On or about March 1, 2006, FOLLIERI caused approximately $140,000 to be sent by wire transfer from a bank account in New York, New York, to the Vatican in Rome, Italy, purportedly to pay for an Engineering Report.

        g.   On or about March 16, 2006, FOLLIERI caused approximately $30,000 to be sent by wire transfer from a bank account in New York, New York, to a bank account in Monaco, purportedly to pay for an Italy Office when in fact no such office existed.

h.   On or about May 16, 2006, FOLLIERI caused approximately $70,000 to be sent by wire transfer from a bank account in New York, New York, to the Vatican in Rome, Italy, purportedly to pay for an Engineering Report.

i.   On or about May 24, 2006, FOLLIERI caused approximately $18,200 to be hand-delivered by check in New York, New York, for payment of expenses incurred during FOLLIERI's vacation.

j.   On or about June 12, 2006, FOLLIERI caused approximately $1,206 to be paid by credit card for an airline ticket for FOLLIERI's girlfriend.

k.   On or about June 13, 2006, FOLLIERI caused approximately $1,071 to be paid by a credit card for an airline ticket for FOLLIERI's girlfriend.

l.   On or about June 23, 2006, FOLLIERI caused approximately $30,000 to be sent by wire transfer from a bank account in New York, New York, to a bank account in Monaco, purportedly to pay for an Italy Office when in fact no such office existed.

m.   On or about June 30, 2006, FOLLIERI caused approximately $52,300 to be sent by wire transfer from a bank account in New York, New York, to the Vatican in Rome, Italy, purportedly to pay for an Engineering Report.

17

n.    On or about September 14, 2006, FOLLIERI caused approximately $30,000 to be sent by wire transfer from a bank account in New York, New York, to a bank account in Monaco, purportedly to pay for an Italy Office when in fact no such office existed.

o.    On or about November 17, 2006, FOLLIERI caused approximately $100,000 to be sent by wire transfer from a bank account in New York, New York, to the Vatican in Rome, Italy, purportedly to pay for an Engineering Report.

p.    On or about November 22, 2006, FOLLIERI caused approximately $5,000 to be paid by credit card for dental charges incurred by FOLLIERI's father.

q.    On or about December 4, 2006, FOLLIERI caused approximately $5,000 to be paid by credit card for dental charges incurred by FOLLIERI's father.

r.    On or about December 22, 2006, FOLLIERI caused approximately $30,000 to be sent by wire transfer from a bank account in New York, New York, to a bank account in Monaco, purportedly to pay for an Italy Office when in fact no such office existed.

(Title 18, United States Code, Section 371.)

## COUNTS TWO THROUGH NINE
(Wire Fraud)

The United States Attorney further charges:

31.  The allegations contained in paragraphs 1 through 26 are repeated and realleged as though fully set forth herein.

32.  On or about the dates set forth below, in the Southern District of New York and elsewhere, RAFFAELLO FOLLIERI, the defendant, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, unlawfully, willfully and knowingly would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit, FOLLIERI caused money to be transferred by wire from New York, New York, to bank accounts located outside the United States, for the purpose of executing such scheme and artifice, as set forth below:

| COUNT | APPROXIMATE DATE | SUBSTANCE OF WIRE TRANSFERS |
|-------|------------------|------------------------------|
| TWO | August 22, 2005 | Wire transfer of approximately $75,000 from New York, New York, to Monaco. |
| THREE | December 19, 2005 | Wire transfer of approximately $185,000 from New York, New York, to Monaco. |

| FOUR | March 1, 2006 | Wire transfer of approximately $140,000 from New York, New York, to Rome, Italy. |
| FIVE | May 24, 2006 | Wire transfer by credit card payment of approximately $18,200. |
| SIX | August 14, 2006 | Wire transfer of approximately $150,000 from New York, New York, to Monaco. |
| SEVEN | November 17, 2006 | Wire transfer of approximately $100,000 from New York, New York, to Rome, Italy. |
| EIGHT | November 22, 2006 | Wire transfer by credit card payment of approximately $5,000. |
| NINE | February 13, 2007 | Wire transfer by credit card payment of approximately $5,995. |

(Title 18, United States Code,
Sections 1343 and 2.)

**COUNTS TEN THROUGH FOURTEEN**
(Money Laundering)

The United States Attorney further charges:

33.   The allegations contained in paragraphs 1 through 26 are repeated and realleged as though fully set forth herein.

34.   On or about the dates set forth below, in the Southern District of New York and elsewhere, RAFFAELLO FOLLIERI, the defendant, transported, transmitted, and transferred, and attempted to transport, transmit, and transfer, funds from a place in the United States to and through a place outside the United

20

States, knowing that the funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, to wit, FOLLIERI transferred and caused to be transferred fraudulently obtained proceeds from a bank account in New York, New York, to a bank account outside the United States for the purpose of concealing the control and location of the proceeds, as set forth below:

| COUNT | APPROXIMATE DATE | SUBSTANCE OF TRANSFER |
|-------|------------------|------------------------|
| TEN | September 13, 2005 | FOLLIERI caused to be transferred from New York, New York, to Monaco approximately $15,000 in proceeds from a wire fraud scheme. |
| ELEVEN | September 28, 2005 | FOLLIERI caused to be transferred from New York, New York, to Monaco approximately $135,000 in proceeds from a wire fraud scheme. |
| TWELVE | March 1, 2006 | FOLLIERI caused to be transferred from New York, New York, to Monaco approximately $500,000 in proceeds from a wire fraud scheme. |

| THIRTEEN | September 14, 2006 | FOLLIERI caused to be transferred from New York, New York, to Monaco approximately $150,000 in proceeds from a wire fraud scheme. |
| FOURTEEN | December 22, 2006 | FOLLIERI caused to be transferred from New York, New York, to Monaco approximately $177,000 in proceeds from a wire fraud scheme. |

(Title 18, United States Code,
Sections 1956(a)(2)(B)(i) and 2.)

## FORFEITURE ALLEGATIONS AS TO COUNTS ONE THROUGH NINE

35.   As the result of committing one or more of the offenses alleged in Counts One through Nine of this Information, RAFFAELLO FOLLIERI, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, which constitutes or is derived from proceeds traceable to the violations, including but not limited to the following:

Money Judgment

a.   At least $2,440,000 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the offenses.

22

<u>Jewelry and Watches</u>

b.   All precious metals, watches, and jewelry recovered on or about July 15, 2008 from the residence of RAFFAELLO FOLLIERI, the defendant, located at 721 Fifth Avenue, Apartment 48H, New York, New York, which includes the following:

(1)   One Audemars Piguet watch with serial number F94698;

(2)   One Audemars Piguet watch with serial number F61030;

(3)   One Trussardi watch with model number 2763;

(4)   One Donald Trump watch with model number GP21;

(5)   One Harrods watch with serial number 667992;

(6)   One Ebel watch with serial number 981909;

(7)   One Cartier watch with serial number 145365;

(8)   One Bucherer watch;

(9)   One Omega watch; and

(10)  One Sekonda watch with serial number 780181.

c.   All precious metals, watches, and jewelry recovered on or about July 15, 2008 from a storage area rented by RAFFAELLO FOLLIERI, the defendant, located at 175 Walnut Street, Bronx, New York, which includes the following:

(1)   One Cartier figurine in a box; and

(2)   One Tiffany clock.

23

d.   All jewelry, watches, and other items recovered in or about August 2008 from an individual who received then from RAFFAELLO FOLLIERI, the defendant, which includes the following:

(1)  One gold colored Rolex watch;

(2)  One silver colored Rolex watch;

(3)  One gold colored ring with light blue-green stone;

(4)  One silver colored chain approximately sixteen inches long with a cross pendant and blue and clear stones;

(5)  One pair of colored silver earrings with silver clasps and blue and clear stones;

(6)  One gold colored ring with clear stones around the band;

(7)  One silver colored bracelet with floral design and light blue and clear stones;

(8)  One silver colored bracelet with clear stones;

(9)  One silver colored necklace approximately sixteen inches long with five flower shaped designs and clear stones;

(10) One five-strand necklace approximately sixteen inches long with pearl beads;

(11) One gold colored chain approximately thirty-

two inches long with a gold colored pendant
with a red-brown stone and a gold colored
tassel; and

(12) One Louis Vuitton box.

<u>Substitute Asset Provision</u>

36.   If any of the above-described forfeitable property,
as a result of any act or omission of RAFFAELLO FOLLIERI, the
defendant:

a.   cannot be located upon the exercise of due
diligence;

b.   has been transferred or sold to, or deposited
with, a third person;

c.   has been placed beyond the jurisdiction of the
Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which
cannot be subdivided without difficulty;
it is the intent of the United States, pursuant to Title 21,
United States Code, Section 853(p), to seek forfeiture of any
other property of FOLLIERI up to the value of the above
forfeitable property, including but not limited to all United
States currency funds or other monetary instruments (i) credited
to account numbers MC5824349000010024466010174 and
MC5824349000010024466010174 in the name of Spiral Associates a/k/a

Spiral International Inc. located at Banque J. Safra in Monte Carlo, Monaco, and (ii) credited to account number 57606 in the name of Keetdale International SA located at HSBC Bank in Monte Carlo, Monaco.

(Title 18, United States Code, Section 981, and
Title 28, United States Code, Section 2461.)

## FORFEITURE ALLEGATIONS AS TO COUNTS TEN THROUGH FOURTEEN

37.   As the result of committing one or more of the money laundering offenses in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i), as alleged in Counts Ten through Fourteen of this Information, RAFFAELLO FOLLIERI, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982, all property, real and personal, involved in the money laundering offenses and all property traceable to such property, including but not limited to the following:

### Money Judgment

a.   At least $2,440,000 in United States currency, in that such sum in aggregate is property which was involved in the money laundering offenses or is traceable to such property.

### Jewelry and Watches

b.   All precious metals, watches, and jewelry recovered on or about July 15, 2008 from the residence of RAFFAELLO FOLLIERI, the defendant, located at 721 Fifth Avenue, Apartment 48H, New York, New York, which includes the following:

26

      (1)   One Audemars Piguet watch with serial number F94698;

      (2)   One Audemars Piguet watch with serial number F61030;

      (3)   One Trussardi watch with model number 2763;

      (4)   One Donald Trump watch with model number GP21;

      (5)   One Harrods watch with serial number 667992;

      (6)   One Ebel watch with serial number 981909;

      (7)   One Cartier watch with serial number 145365;

      (8)   One Bucherer watch;

      (9)   One Omega watch;

      (10)  One Rolex watch with model number 501B;

      (11)  One silver Omega watch with model number 7912;

      (12)  One Omega watch with a black band and white face with Roman numerals; and

      (13)  One Sekonda watch with serial number 780181.

     c.   All precious metals, watches, and jewelry recovered on or about July 15, 2008 from a storage area rented by RAFFAELLO FOLLIERI, the defendant, located at 175 Walnut Street, Bronx, New York, which includes the following:

      (1)   One Cartier figurine in a box; and

      (2)   One Tiffany clock.

     d.   All jewelry, watches, and other items recovered in or about August 2008 from an individual who received

then from RAFFAELLO FOLLIERI, the defendant, which includes the following:

(1)   One gold colored Rolex watch;

(2)   One silver colored Rolex watch;

(3)   One gold colored ring with light blue-green stone;

(4)   One silver colored chain approximately sixteen inches long with a cross pendant and blue and clear stones;

(5)   One pair of colored silver earrings with silver clasps and blue and clear stones;

(6)   One gold colored ring with clear stones around the band;

(7)   One silver colored bracelet with floral design and light blue and clear stones;

(8)   One silver colored bracelet with clear stones;

(9)   One silver colored necklace approximately sixteen inches long with five flower shaped designs and clear stones;

(10)  One five-strand necklace approximately sixteen inches long with pearl beads;

(11)  One gold colored chain approximately thirty-two inches long with a gold colored pendant

with a red-brown stone and a gold colored

tassel; and

(12) One Louis Vuitton box.

<u>Substitute Asset Provision</u>

38.   If any of the above-described forfeitable property,

as a result of any act or omission of RAFFAELLO FOLLIERI, the

defendant:

a.   cannot be located upon the exercise of due

diligence;

b.   has been transferred or sold to, or deposited

with, a third person;

c.   has been placed beyond the jurisdiction of the

Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which

cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18,

United States Code, Section 982(b), to seek forfeiture of any

other property of FOLLIERI up to the value of the above

forfeitable property, including but not limited to all United

States currency funds or other monetary instruments (i) credited

to account numbers MC5824349000010024466010174 and

MC5824349000010024466010174 in the name of Spiral Associates a/k/a

Spiral International Inc. located at Banque J. Safra in Monte

Carlo, Monaco, and (ii) credited to account number 57606 in the name of Keetdale International SA located at HSBC Bank in Monte Carlo, Monaco.

                    (Title 18, United States Code,
                       Sections 982 and 1956.)




                              _____
                              LEV L. DASSIN
                              Acting United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

### - v. -

### RAFFAELLO FOLLIERI,

**Defendant.**

### INFORMATION

08 Cr. ___ (JGK)

(Title 18, United States Code, Sections
371, 1343, 1956, and 2)

LEV L. DASSIN
Acting United States Attorney.

---

9/10/2008   FILED WAIVER OF INDICTMENT AND INFORMATION. DEFT ARRAIGNED
ON INFORMATION. DEFT PRES W/ATTY FLORA EDWARDS. AUSA
REED BRODSKY. REPORTER PATRICIA NILSEN. ITALIAN INTERPRETER
LUCIANA AMES. DEFT ENTERS PLEA FQ GUILTY FO 14-COUNT INFORMATION.
SENTENCE DATE 10/3/2008 AT 11:00AM. PSI ORDERED. DEFT CONT'D DETAINED.

— JUDGE KOELTL