FLORA EDWARDS
ATTORNEY AT LAW
A PROFESSIONAL CORPORATION

ADMITTED IN NY, NJ & FLA

115 BROADWAY · SUITE 1505 ★ NEW YORK, NEW YORK 10006 ★ TEL: 212-785-3344 ★ FAX: 212-577-2865 ★ E-MAIL: FMELAW@AOL.COM

October 14, 2008

**By ECF and Hand Delivery**
Hon. John G. Koeltl:
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

          Re:   *United States v. Raffaello Follieri*
                08 CR 850 (JGK)

Your Honor:

Raffaello Follieri is scheduled to appear before you for sentencing on Thursday, October 23, 2008. The within letter is submitted in order to provide the Court with some insight into the defendant who stands before you and, in that way, assist the Court in imposing a just sentence.

On September 10, 2008 Raffaello Follieri, the Chairman and CEO of the Follieri Group, pled guilty pursuant to a plea agreement to wire fraud and money laundering in connection with the Follieri Group's participation in a Joint Venture with Yucaipa Investments the purpose of which was to purchase church properties. (A copy of the Plea Agreement is submitted herewith as Exhibit A).

The parties stipulated in the plea agreement that the loss amount attributed to Follieri's conduct was more than $1,000,000 but less than $2,500,000 (Exhibit A at 4-5). The total adjusted offense level including the deduction of three points for acceptance of responsibility was 24 which carries a presumptive sentencing range of 51- 63 months imprisonment.

The following objections to the pre-sentence report are highlighted, because they potentially have an impact on the sentence to be imposed in light of the Supreme Court's

Hon. John G. Koeltl
United States v. Follieri
08 CR 850 (JGK)
Sentencing Memorandum
Page 2 of 13

decision in *United States v. Booker*, 125 S.Ct. 738 (2005) and the Second Circuit's decision in *United States v. Crosby*, 397 F.3d 103 (2nd Cir. 2005)[1]

### A. Paragraphs 23-32, and 39 Overstate The Loss Amount By $10,463,364.11

When he pled guilty, Mr. Follieri accepted responsibility for the full range of conduct to which he pled, i.e., wire fraud and money laundering in the amount of $2,440,000. Accordingly, Mr. Follieri allocuted to the following:

> From 2005 to 2007 I agreed with others to use a portion of the money that the investor had placed in the joint venture
>
> ****
>
> to defraud the investor
> ****
>
> On the date and in the amount stated in Count[s] Two to Fourteen, I wired money from the joint venture account in New York to my personal account to pay for personal expenses. I then wired the money to accounts controlled by me in Europe so that the origin of the money could not easily be traced. I also wired money from my joint venture account in New York to one of the accounts in the Vatican bank near Rome to promote my relationship with the Vatican.

---

[1] The following objections which do not impact on the sentence are offered merely to correct the record: The Section on Citizenship reflects Mr. Follieri's status as an illegal alien. Mr. Follieri wishes the Court to know that his B-1/B-2 Visa does not expire until 2010 and that the only reason that he failed to comply with the three month requirement to return to Italy before reentering the United States is that in September (the end of the three month period) he was in custody. In addition the undersigned wishes to clarify Paragraph 67 to the extent that she is not in possession of two Andy Warhol prints. Rather, the prints were sold to POPs Gallery and she was paid by POPs Gallery with a check for $21,000. In addition the $53,423.32 she received in legal fees were listed as "cash" (as opposed to other forms of property - e.g., securities, etc.). However, the funds were paid by bank check in two checks from Signature Bank following release of the funds by the Government.

> I did not have the investor authorization to use the money that way. I knew what I was doing was wrong.

Exhibit B: Allocution at 31-32

The total loss amount set forth in the pre-sentence report is more than five times the amount to which Mr. Follieri pled guilty and to which the Government stipulated. Specifically, the loss amount of $3,954,789 attributed to Yucaipa (PSR at ¶¶25-26), is not only $1,514,789 above the total amount stipulated to by the Government in the plea agreement, it is more than twice the amount of $1,850,000 calculated by the victim, Yucaipa.

As to the losses attributed to Dundee Realty and Plainfield (PSR at ¶¶28-29), these losses are not conceded by Mr. Follieri as attributable to any fraudulent conduct, nor were these losses included in the loss amount, notwithstanding fact that at the time the Government stipulated to the loss amount of $2,440,000, the Government was fully aware of the Follieri agreements with both Dundee Realty and Plainfield.

Therefore, Defendant Follieri requests that Paragraphs 23-32 of the Presentence Report be stricken and that Paragraph 39 be revised to reflect a 16 point enhancement which is in accordance with the stipulated loss amount in the plea agreement.

### B. Paragraphs 25 and 39 Overstate The Number Of Victims

On September 15, 2008, three working days after Defendant Follieri pled guilty to the above offense in this Court, the Government provided Probation with a list of 15 "potential" victims (PSR at ¶ 25). Probation states that according to the Government, "the principal victims are Yucaipa Companies, LLC and Monsignor Tomichek" (PSR at ¶26). Of the remaining 13 victims identified by probation, to Defendant Follieri's knowledge only Msgr. Hodge, Dundee Realty and Plainfield have submitted claims for alleged losses.

Defendant Follieri does not concede that there are in excess of 10 victims and indeed, the Government in agreeing to the stipulated offense level less than a week before the list of potential victims was submitted to Probation, made no calculation which reflected any such adjustment.

Significantly, one of the potential victims listed by Probation, Richard Ortoli wrote the following to the Court:

> When I was representing Mr. Follieri he impressed me with his religious faith. He was and I understand continues to be regular churchgoer. I know that his business involvement with the Catholic Church in the United States came about as a result of his attachment to his religion. I am convinced that initially his intentions were innocent and that they stemmed from a desire to do good. I can only speculate as to what went awry after I ceased to represent him.
>
> I knew Mr. Follieri to be extremely generous, not only monetarily but also with his time. He was very devoted to the causes sponsored by the foundation he ultimately set up.
>
> In summary, I believe that Mr. Follieri started his ventures with the best of intentions and with high principles but that he somehow went astray. In light of the damage he has inflicted on himself, on his family and on the others with whom he was involved, he has already paid heavily for his crimes. If there is any redeeming factor in this sorry mess, it is that Mr. Follieri has accepted responsibilty for his actions.
>
> With this in mind, I don't believe that a long prison sentence will serve any further societal purpose and I ask that you take this into consideration in determining Mr. Follieri's sentence.

Exhibit C: Ortoli Letter dated September 17 2008.

In light of the above, Mr. Follieri requests that Paragraph 24 of the Presentence Report be stricken and that Paragraph 39 be revised to eliminate the two level enhancement under §2B1,1(b)(2)(A)(i).

Hon. John G. Koeltl
United States v. Follieri
08 CR 850 (JGK)
Sentencing Memorandum
Page 5 of 13

C.  **Paragraphs 39, 44. 46, 48 and 74 Should Be Revised To Reflect The Offense Level Contemplated In The Plea Agreement**

As a matter of public policy, the use of the recalculated amount in determining the sentence undermines the very essence of the plea agreement. The valuable benefits of plea agreements to both sides have long been recognized by the courts. "Most notably, the defendant gains reasonable certainty as to the extent of his liability and punishment, and the Government achieves a conviction without the expense and effort of proving the charges at trial beyond a reasonable doubt." *United States v. Rosa*, 123 F.3d 94 (2d Cir. 1997).

A sentence which is greatly disproportionate to the sentencing range in the plea agreement tends to seriously impair the effectiveness of the plea bargaining process. *See United States v. Romano*, 825 F.2d 725 (2d Cir. 1987). *See also United States v. Griffin*, 510 F.3d 354 (2d Cir. 2007); *United States v. Lawlor*, 168 F.3d 633, 637 (2d Cir. 2001); *United States v. Palladino*, 347 F.3d 29 (2d Cir. 2003).

Here, Defendant Follieri pled guilty in reliance on the stipulated facts in the plea agreement. The arbitrary change in the loss amount to enhance Mr. Follieri's sentence abrogates the plea agreement[2]. Although the parties' "stipulation ... does not fix that amount as a matter of law"" or bind the sentencing court, the court may properly rely on such a stipulation in finding facts relevant to sentencing." *United States v. Rosen*, 409 F.3d 535 (2d Cir. 2005); *United States v. Granik*, 386 F.3d 404, 411-12 (2d Cir.2004). It is respectfully submitted that Defendant Follieri had a right to rely on the stipulated facts in the plea and that these facts should serve as a basis for sentencing.

For the above reasons, Defendant Follieri asks the Court to rely on the stipulated facts in the plea agreement and requests that Paragraph 39 of the presentence report be revised to reflect a base offense level of 25, Paragraph 44 be revised to reflect an adjusted offense

---

[2] Defendant Follieri understands that the Guideline estimate is not binding on probation (Exhibit A at 7). However, Mr. Follieri does not read that paragraph to imply that the Government is free to stipulate to one set of facts for purposes of the plea agreement and then provide the Probation Department with another set of facts for use in its report. Nor does Defendant Follieri believe that the Government has made such a dual representation with that intention. Indeed, the Government has indicated to the undersigned that it is prepared to stand on its agreement.

Hon. John G. Koeltl
United States v. Follieri
08 CR 850 (JGK)
Sentencing Memorandum
Page 6 of 13

level of 27 and Paragraphs 46 and 48 be revised to reflect an Adjusted Offense Level of 24. Finally, Defendant Follieri asks that Paragraph 74 be revised to reflect a sentencing guideline range of 51 to 63 months.

## Consideration Of The Sentencing Factors Pursuant to 18 U.S.C.§3553(a)

Pursuant to 18 U.S.C. §3553(a) the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection" Thus, the Court must consider; (1) the nature and circumstance of the offense and history and characteristics of the defendant; (2) the need of the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public; (3) available sentences; (4) Guidelines ranges, and (5) the need to avoid sentencing disparities.

### A. Raffaello Follieri's Good Character And Lifelong Commitment To Good Works Are Mitigating Factors Which Support A More Lenient Sentence

Raffaello Follieri comes from a old respected family in Foggia, a small city near Naples, in the south of Italy. His father Pasquale is an attorney and his mother, who is very ill, is a retired teacher (See Exhibit D 1-2: letters from Pasquale Follieri and Ana Cordella Follieri). His maternal grandfather is a retired general of the Italian military (See Exhibit D3: Letter from Mario Cordella).

The Follieri family has long and enduring ties to the Catholic Church. Father Gerardo Saldutto, the guardian and bursar of the Convent of Saint Anna in Foggia writes:

> I have known the Follieri family for a long time. Raffaello's grandfather, the late Lello Follieri, was a very worthy journalist very close to Padre Pio. Raffaello's father, Pasquale, is a well known attorney and journalist from Foggia and his mother, Mrs. Anna Cordella, a talented teacher of mathematics and science. This family has always practiced the most authentic Christian values and been a model and example for the entire lay and Catholic community of the city.

> This is the environment in which Raffaello grew up and these are the values that he learned to put in practice since childhood. (Exhibit D-4: Letter from Padre Gerardo Saldutto)

Father Michele Ferruggini, priest of the Parish of Jesus and Mary in Foggia writes of the Follieri family:

> This is a highly regarded and honored family, fully convinced of the fundamental values of life, devoted to the service of the Church, always generous towards those in need of aid. As a matter of fact, several times I turned to their exquisite availability and, with generous amiability, they always made every effort to meet the needs of those that I came to them representing. (Exhibit D-5: Letter from Padre Michele Ferruggini)

See also Exhibits 6-11: Letters from Msgr. Pio Tamburrino, Archdiocese of Foggia, Father Tonino Intiso, parish priest of San Filippo Neri in Foggia, Father Federico Pirozzi, Father Superior of the Parish of Satin Rufina and Seconda of the Diocese of Rome, Father Marco Savarel, parish priest of the Parish of Our Lady of Lourdes, Fr. Faustino Parisi, Principal of Liceo Sacro Cuore, Father Gianluca Zolli the Director of the Catechism Office and the School of Theology of the Diocese of Tivoli).

Even as a high school student, Raffaello was always deeply religious. He put his faith to practice at an early age when he joined the Catholic Youth Organization of Foggia (See Exhibits D-12-13: Letters from Father Fortunato Grottola and Father Angelico of the Minor Capuchin Friars Provincial Cura of the Province of Saint Angelo Foggia). Gianfranco Corsini, a long time friend of the Follieri family writes:

> ...I know Raffaello since he was a child. Therefore I have had the opportunity to know and appreciate the innate qualities of Raffaello who has always shown an excellent inclination to the studies and the values of life. Concerning this, I shared with Raffaello his innate love for the weak, needy of help and elderly during the time when, still a High School student he

Case 1:08-cr-00850-JGK Document 24 Filed 10/14/08 Page 8 of 13

Hon. John G. Koeltl
United States v. Follieri
08 CR 850 (JGK)
Sentencing Memorandum
Page 8 of 13

> made a commitment to work at the Charitable Youth Center in the Diocese of Foggia. (Exhibit D-14: Letter from Fianfranco Corsini)

*See also* Exhibits D15-17: Letters from Ernesto Tardivo, Cinzia di Miscio, Dr. Massimo v. Mori).

As a university student in Rome, in a unprecedented act of generosity, Raffaello Follieri provided shelter to a Pakistani refuge and her child. The woman, a victim of domestic violence, fled Pakistan after her husband disfigured her face with acid. Raffaello's friend, Ersilla Litrico writes:

> Fakra arrived in Italy through Themina Durranim a famous Pakistani writer. The girl had no face as the acid had totally disfigured her. As soon as she arrived in Italy we went to the airport to pick them up and immediately a problem arose as to where they would be lodged. On this occasion Raffaello immediately made himself helpful, offering hospitality to the woman and little Nauman in his beautiful apartment in Parioli, Rome. (Exhibit D18: Letter from Ersilla Litrico)

As a university student, Raffaello also joined MAREVIVO ("The Living Sea") project and became active in defense of the environment, working with others to clean up the beaches and to protect the ocean. (Exhibit D19: Letter from Leonardo de Meo).

As a successful businessman, Raffaello maintained his commitment to the service of others. The Follieri Foundation initiated a Vaccination Program in Nicaragua and in Honduras. (information regarding the program is submitted herewith as Exhibit E along with a DVD containing a video of the Managuas program).

In addition the Follieri Foundation donated thousands of Prescription Discount Cards to parishioners in Catholic dioceses throughout the United States. An e-mail from Wendy Hollinger from Catholic Community Services of Baton Rouge reports the following feedback shortly after hurricane Katrina destroyed the city of New Orleans:

Case 1:08-cr-00850-JGK   Document 24   Filed 10/14/08   Page 9 of 13

Hon. John G. Koeltl
United States v. Follieri
08 CR 850 (JGK)
Sentencing Memorandum
Page 9 of 13

> "Thank God for Follieri!! Now I can finally afford to get my medicine again" Leslie, an evacuee from New Orleans who has been in Baton Rouge for four months, burst into my office last week, face suffused with relief. "This is great! I went by Walgreen's today and I was able to AFFORD my medicine!"
>
> "This is Mrs. Higgins", the caller said self-consciously "I don't know if I should be calling you, but I saw your show on TV about the Follieri Drug cards ... and I got one and I wanted to thank you for making it so easy to get my medicine for more than $20 less per month" (Exhibit F: E-mail from Wendy Hollinger)

In addition, the Follieri Foundation contributed to the operation of an AID Hospice Center in Rio de Janeiro, donated funds to the Sisters of Charity in Rio for food for the orphanage and supported the Diocesean Arts Center in Bahia, Brazil. Cardinal Agnelo, the Cardinal of Salvador writes:

> It is with sadness that I received the news about young Raffaello Follieri.
>
> I got to know him when he visited our city, Salvador. I never observed in him any sign of lack of sincerity, or rectitude. He was always measured and discrete and made a very good impression.
>
> I cannot evaluate the circumstances which brought him to prison. However, at the same time, I can affirm the admiration and high hopes that marked my meetings with Raffaello and his family. (Exhibit G: Letter from Cardinal Agnelo)

Submitted herewith are more than 100 letters from family and friends, including public officials (Exhibit D22, Raffaele Di Gioia; a former member of Parliament; Exhibit D23: Giacomo Mazzotti, Deputy Head of the State Police; D24: Sandro Biferi, Mayor of Arcinazzo Romano; D33: Orazio Ciliberti, Mayor of Foggia; D34: Corrado Tibollo,

Administrator of the City of Foggia) all of which attest to Defendant Follieri's fundamental goodness and beg this Court for mercy.(See Exhibits D25 through D109). We most respectfully urge that this outpouring of heartfelt support should be important factor in persuading the Court to be lenient at sentencing.

### B. Anna Follieri's Failing Health Is A Mitigating Circumstance Which Supports The Need For Leniency

Raffaello's mother received a transfusion of contaminated blood which resulted in her contracting Hepatitis C. Over the years her condition deteriorated and she is now suffering from advanced cirrhosis of the liver. (See Exhibit H1 and 2: Letter from Paolo Telesforo, MD, head of Internal Medicine and Ultrasound Scan Telesforo and a copy of Mrs. Follieri's medical records from the Maternity Hospital in Italy.)

By 2005, her condition had deteriorated to a point where the Follieri family determined to seek medical treatment for her in the United States. She was seen by Dr. Ira Jacobson at Cornell Univesity Hospital where she underwent PEG-Intron and Ribivirn anti-viral therapy which she continued until April, 2007. (See Exhibits H3-4: Letter from Dr. Jacobson and accompanying medical records). In 2008 her condition worsened and she returned to the United States with the intention of seeking medical care once again. However, following Raffaello's arrest, she returned traumatized to Italy unable to remain in the United States alone and afraid. A family friend, Aurora Maggio Cooper describes the impact of Raffaello's arrest and imprisonment as follows:

> Her life is hanging from a thread of hope: finding some new drugs still not available in Italy. I could feel Raffaello's profound attachment to his mother and father as he was trying to convince them to move near him. Being far from his family is intolerable to him, above all for the bad health condition of his mother, who after her son's misadventure, in shock, having been left alone, returned to Italy.

Exhibit D20: Letter from Aurora Maggio Cooper

Hon. John G. Koeltl
United States v. Follieri
08 CR 850 (JGK)
Sentencing Memorandum
Page 11 of 13

Given her deteriorating health, it is improbable that Mrs. Follieri will be able to travel again to the United States to visit her son while he is serving his term of imprisonment. It is also unlikely that she will survive to see her son again, if the court imposes at term of imprisonment at the upper end of the guideline range. These compelling family circumstances are well within the Court's inherent power for consideration either within the Guidelines or as a basis to impose a non-guideline sentence.

### C. The Circumstances Surrounding The Offense Support The Need For Leniency

In 2003, drawing on its long-standing ties to the Catholic Church[3], the Follieri family envisioned a business endeavor that would provide assistance to the Catholic Church in divesting itself of real estate assets that were no longer serving the needs of the Church. The Follieri Group was formed to assist the Catholic Church by purchasing, as principals, the Church's properties and then renovating them for uses such as low and middle income housing, community centers, daycare facilities, senior citizen housing, places of worship, offices and retail spaces. The business model proved successful.

In 2006 Follieri was awarded the 2006 prize from the Junior Chamber International - NOM Italy - as the best young entrepreneur of the year. (Exhibit D21: Letter from Saverio Catalano, Esq.)

In October, 2006, Mr. Follieri received the National Italian American Foundation Special Achievement Award for Humanitarian Service (Exhibit J: NIAF Press Release)

By 2007, with Yucaipa Investments as its investment partner by 2007, Follieri/Yucaipa, LLC had purchased almost $50 million in properties.

In March, 2007 he was appointed special consultant to the Pontifical Mission Society

---

[3] See Exhibits I1-5: Photographs of Raffaello Follieri in an audience with Pope John Paul II at the Vatican in the presence of Mgsr. Carru, of Raffaello Follieri and his father, Pasquale, with Cardinal Regali, Cardinal of Phildelphia, of Raffaello Follieri with Cardinal Sodano, of Raffaello Follieri and Msgr. Migliore, the Vatican Nunzio to the United Nations and a photograph of Pasquale and Anna Follieri with Cardinal Egan)

Hon. John G. Koeltl
United States v. Follieri
08 CR 850 (JGK)
Sentencing Memorandum
Page 12 of 13

(Exhibit K: Press Releases dated March 23, 2007).

There is an old saying that "the road to Hell is paved with good intentions". Exactly as Richard Ortoli said in his letter "... Follieri started his ventures with the best of intentions and with high principles but that he somehow went astray. " (Exhibit C). The unanswered question remains, how did this young man with an impeccable reputation and so much promise, come to such an unhappy end.

When he was only 24 years old, this young man from a small city in the South of Italy found himself a successful international entrepreneur befriended by the rich and famous. In a brief period of time he was socializing with some of the wealthiest and most successful people in the world. He was surrounded by movie stars and celebrities and this young man who neither drinks nor smokes became intoxicated with it all. Unfortunately, he lacked the resources to maintain the opulent life style of his new friends. Even more unfortunately, he had almost unfettered access to hundreds of thousands of dollars with few controls on his spending ability, until it was too late. Soon he succumbed to the temptation. The results was an a colossal error in judgment which has had a devastating impact on Raffaello and those around him.

As a result of his conduct, he has lost his business, his freedom, his reputation. He has disgraced his family, caused pain and suffering to those who had faith in him and he has embarrassed the Church he loves.

However, a man should not be judged solely by the worst thing he has ever done. Raffaello Follieri has also brought joy and comfort to countless people in need of assistance. He is a loving and devoted son and he has the potential and the innate talent to a make a significant contribution to society in the future.

He has recognized the error of his ways and has accepted responsibility for his conduct. He begs the Court to consider this egregious error in the context of a lifetime of good work and his potential for the future.

Hon. John G. Koeltl
United States v. Follieri
08 CR 850 (JGK)
Sentencing Memorandum
Page 13 of 13

### D. Leniency Will Not Undermine The Need Of The Sentence To Reflect The Seriousness Of The Offense, Promote Respect For The Law, Provide Just Punishment, Afford Adequate Deterrence And Protect The Public

Under the terms of the plea agreement, the presumptive sentencing range (without considering any mitigating circumstances) is 51 to 63 months. Whatever sentence the Court imposes, upon completion of his term of imprisonment, Defendant Follieri will not be released. Instead he will be transferred to a Detention Facility (under conditions far more dire than even the intolerable conditions he has experienced at MCC) for an indeterminate period to await deportation to Italy.

To say his hopes and dreams of building a thriving business in the United States has been a disaster is an understatement. There is no danger he will ever return to this Country.

A non guideline term of imprisonment of 36 months will speed his transfer and deportation and is, under these circumstances, a sentence which is more than sufficient but not greater than necessary to achieve society's purposes. 18 U.S.C. §3553(a)

### Conclusion

Any system of justice remains a live force only so long as it echoes a deeper public commitment to compassion. We have unswerving faith and confidence in this Court's ability to adhere to these civilized standards and urge that it impose a sentence of 36 months which will permit Raffaello Follieri to be transferred as soon as possible to immigration services and thus begin his journey home. We urge that if the Court sees fit to render such a humane sentence, it will never have any reason to regret it.

Respectfully,

Flora Edwards
*Attorney for Raffaello Follieri*

cc:   AUSA Reed Brodsky
      (By ECF and Federal Express)